## Case No. 5,487.

### GLOUCESTER INS. CO. v. YOUNGER.

#### [2 Curt. 322.] 1

Circuit Court, D. Massachusetts.    May Term, 1855.[2]

ADMIRALTY JURISDICTION—MARINE INSURANCE—APPEAL—FACTS FOUND WITHOUT EVIDENCE—ABANDONMENT—ACCEPTANCE BY UNDERWRITER—STATE DECISIONS ON GENERAL LAW—CONSTRUCTION OF POLICY.

1. In this circuit it must be taken to be settled that the admiralty jurisdiction over policies of insurance exists, until some contrary decision shall be made by the supreme court.

[Cited in Jackson v. The Magnolia, 20 How. (61 U. S.) 335; The Sarah Jane, Case No. 12,349; Insurance Co. v. Dunham, 11 Wall. (78 U. S.) 35; Id., Case No. 10,155; Coast Wrecking Co. v. Phoenix Ins. Co., 7 Fed. 242; The San Fernando v. Jackson & Manson, 12 Fed. 342; Insurance Co. of Pennsylvania v. The Waubanshene, 24 Fed. 559; The Gilbert Knapp, 37 Fed. 210.]

2. The practice of bringing admiralty cases into this court by appeal, without the evidence, upon the facts found by the district court, disapproved.

[Cited in The Chatham, 3 C. C. A. 161, 52 Fed. 397.]

3. If the underwriter, after an abandonment, takes possession of and repairs the vessel, this amounts to an acceptance of the abandonment.

[Cited in Richelieu & O. Nav. Co. v. Boston Marine Ins. Co., 136 U. S. 433, 10 Sup. Ct. 941.]

4. The decisions of the highest court of the state do not govern this court upon questions of general commercial law; nor are they evidence of a local usage, which controls the law.

5. The clause in the policy giving to each party the right to act in recovering, saving, and preserving the property, applies only to its relief from present peril, and the temporary care of the property.

[Appeal from the district court of the United States for the district of Massachusetts.]

This appeal from the district court [Case No. 18,183] came before this court on the following agreement:—

"This is a libel founded on a policy of insurance, which comes before the court on appeal from the district court, and under an agreement filed early in the case, and in the anticipation that much testimony would be produced on both sides, that the finding of the judge of the district court upon the facts in evidence should be conclusive, but that in the appellate court all matters of law should be open to both parties. The agreement of the parties and the opinion of the district judge are annexed, and in case of any discrepancy between them and the 'facts' hereinafter stated, are to be preferred. But as the facts are not all fully stated in the opinion, it was deemed necessary in order to present the case intelligibly, to make the following statement. It was admitted or appeared that the libellant [Oliver Younger] was part owner of the schooner E. P. Howard, and that his in-

---

1 [Reported by Hon. B. R. Curtis, Circuit Justice.]

2 [Affirming Case No. 18,183.]

terest was insured by the defendants by a policy which makes part of the case. The other owners with the master, were also insured by the defendants and the Gloucester Fishing Company, which is also sued in other libels, and in their doings in relation to this vessel both offices acted together. The libellant offered evidence to show that on the 29th of September, 1853, while at anchor off Chittacamp, in the Bay of St. Lawrence, a gale arose in which the vessel dragged her anchors, struck upon a ledge and was, as libellant alleges, but it was not admitted, very seriously damaged, and the master fearing she would sink or go to pieces, slipped his cables and ran the vessel ashore on a sand beach. Several vessels were driven ashore at the same time, and all but one got off. The libellant introduced evidence to show, that the vessel was so much injured that she could not be got off and permanently repaired at that place, and that there were not means at that place to put temporary repairs upon her, and that she could not be taken with reasonable safety to another port until the following summer, if at all. The respondents offered evidence to show, that she might have been got off without any difficulty, by her own crew, that she was very slightly damaged, and that men and materials to make her safe to go to Canso, sixty miles off, or to Pictou, one hundred miles off, where permanent repairs could have been made, or to Gloucester, were to be had there. The master proceeded to strip the vessel, and stored the sails, rigging, and outfits there, and left the vessel in charge of the Jersey Company and came home. While at Chittacamp, the master wrote to one McKean, at Canso, who, on receipt, sent a telegraphic despatch to one of the directors of the fishing insurance company, in the following words: 'October 5, E. P. Howard stranded at Chittacamp, bilged, no prospect of getting her off, master waiting instructions.' On receipt of which the insurers telegraphed to one William Tarr, who was usually there, as follows: 'Do all that you can, with the advice of the shippers, that will be to the advantage of all concerned and draw on the office. Please report. Get the vessel off if possible.' On arrival at Canso, October 8, the master sent to the defendants a telegraphic despatch as follows: 'Schooner E. P. H., ashore, tide ebbs and flows into her, keel injured badly, started out of wood ends by striking on a reef of rocks, strained badly, I abandon her to you and claim a total loss.' On receipt of this the two insurance companies sent to him the following despatch, which was not received by him: 'Unless the vessel and materials can be sold at private sale for about one thousand dollars, strip her and store the sails and rigging, outfits, &c., at some proper place, say with the Jersey Company, or at Port Hood.' The companies subsequently received information, which led them to suppose that the vessel was not much damaged,

and then telegraphed and wrote to said Tarr to get her off and bring her home. The master had previously returned and had an interview with the insurers. No exception was taken at the time of the receipt of the master's despatch to it, as being an informal or unauthorized abandonment, nothing being said about it.

"November 28. The insurers made an agreement with four persons at Gloucester, to go down and get the vessel off and bring her home; this was done, and the vessel arrived in Gloucester in February, with the outfits on board; there was no evidence that they were tendered to the owners. The insurers caused her to be repaired at an expense less than half her valuation, and tendered her to the owners, March 15, 1854, who refused to take her, insisting upon a claim for total loss, and that she was not thoroughly repaired, nor in reasonable time. No evidence was introduced on the part of the owners, of any express abandonment other than that of the master's despatch, or of any express demand of payment of the sums insured up to March 14. Evidence was at hand, on both sides, as to the cost and sufficiency of the repairs made, and the reasonableness of the time of the tender, but those questions not being deemed material by the court in the posture of the case, they were not gone into. It is agreed that the first of the above-named causes shall be tried in the district court, and that if either party is dissatisfied with the decision of the court upon any question of law, he shall have the right to appeal, but that the findings of the court upon matters of fact shall be conclusive, and that no evidence shall be introduced in case of appeal in the appellate court, except the opinion of the judge of the district court on a statement of facts made thereon; but all questions of law, including inferences of law from facts proved, are to be open on appeal. The other cases shall be continued to abide the result of the one tried, and decrees therein shall be entered accordingly without appeal. Provided, however, that if in the case tried, the libellant shall fail on any technical objection or matter of form or proof not decisive of the other causes, they may be opened in the district court so far as those objections are concerned.

"(Signed)
"R. H. Dana, Jr., for Libellants.
"F. C. Loring, for Respondents."

SPRAGUE, District Judge. In this case, two principal questions arise, depending partly on law and partly on facts; first, whether there has been abandonment, and second, whether the abandonment has been accepted. I find it more convenient to consider the latter question first, namely, if there has been an abandonment, has it been accepted? The respondents took possession of the vessel and repaired her, and offered to return her to the owner upon his paying

a portion of the expenses of repairs, intending, no doubt, the one third new for old, and perhaps a part of the expense of getting her off, as a general average claim. The libellant contends that this was an acceptance. The case of Peele v. Merchants' Ins. Co. [Case No. 10,905], is a direct decision to the point, that if the vessel is abandoned, and the underwriter takes possession, repairs and offers to return her, it is an acceptance of the abandonment, by operation of law, although he refuses in terms to accept it. The taking possession and repairing is an acceptance, notwithstanding the actual intention, or the declaration, to the contrary. This decision of the circuit court I adopt as binding on this court. In the state courts of Massachusetts, the doctrine is that the underwriter may, after an abandonment, refuse to accept it, and take possession of the vessel and repair her, and if the loss is proved to have been less than fifty per cent. may return her to the former owner within a reasonable time. This doctrine is peculiar to Massachusetts. I believe it is not to be found anywhere else, either in the decisions of the federal courts, or in the state courts of any other state, or in the law of England, or of the continent of Europe. But the other principle is the law of the courts of the United States, and of the other states of the Union.

The great controversy in this case, therefore, is whether there was an abandonment. I am of opinion that the master, as master, has no authority to abandon the vessel. There must be a legal authority to transfer the property to the underwriters. It is urged that the acts of the insured are a waiver of the defects in the abandonment. The underwriter may waive informalities, and may waive his right to any thing which he is entitled to have. For instance, he may waive a notice of the nature of the loss, or may waive an objection to want of reasonable time; and if he does acts which are justifiable only under an abandonment, he waives all such objections to its sufficiency. But here it is not the insurer's right, but the owner's right, that the person who makes the abandonment shall have authority to do so. The underwriters cannot waive the owner's right, and get property in the vessel without the owner's consent. But an act by an agent may be subsequently ratified and confirmed by the principal. Has there been such a ratification here? There is no doubt that there has been an assent, at some time, as a demand for a total loss was made prior to the commencement of the suit. An abandonment must be in a reasonable time. This is a material right possessed by the underwriter. Must the ratification be governed by the same rule, as to time, with the original abandonment? The ordinary rule of the law of agency is, that a ratification may be made at any time. But is there not something peculiar in the case of an abandonment?

The reason why an abandonment is justified and held good in a case not actually one of total loss, is that the underwriter may take the vessel and use her to the best advantage. Therefore, the insured should give the underwriter, at the earliest reasonable time, all the benefits in his power. Until a valid abandonment is made, the underwriter can exercise no act of ownership upon the vessel. Consequently, as the owner may ratify or not, at his pleasure the act of the master, the question remains undecided in the interval; and if the owner shall refuse to ratify the abandonment, the acts of ownership exercised by the underwriter would be illegal. It is clear therefore, that the ratification by the owner must be within such reasonable time, as to give the underwriter the opportunity to decide early, whether to accept or not, and if he does accept, the opportunity to make the best use he can of the wreck. The same reason which requires the abandonment to be made seasonably, requires the ratification of the act of assumed agency to be made seasonably. The owner is not obliged to abandon on mere rumor. He may wait a reasonable time to ascertain the actual state of things respecting the disaster. But he is not to wait in order to ascertain what his interests may be, in the state of the market, or as developed by subsequent events. Was the ratification in this case made within a reasonable time? If we confine ourselves to the direct evidence, it has not been shown, when the libellant first knew of the loss and of the act of Howard. He does not appear in the case, until the letter of the respondents to him, tendering him back his vessel. His reply to this letter by his proctor, shows that he had claimed a total loss, and relied upon the abandonment. On the direct evidence, therefore, there is no proof of unreasonable delay. But the proper course of inquiry includes also the circumstantial proof. It appears that before the master's despatch, the news of the disaster had been communicated to the respondents by Mr. Tarr. They replied to him, authorizing him to get the vessel off if possible, at their expense. They also authorized Capt. Howard to strip the vessel and store the rigging and outfits, and to sell in a certain contingency. No act was done in consequence of these despatches, but this was not by reason of an invalidity in the abandonment. Late in October, Capt. Howard returned, and Capt. Reed and others returned, who had been at the place. Full inquiries were made of all these parties, and the respondents, as far as they thought it expedient, made their contract with Reed and others to get off the vessel. She was got off and brought to Gloucester in February. She was then repaired and tendered to the former owners in March. The respondents do not complain that they were delayed at all in their action. On the contrary they say that the vessel was got off, repaired, and re-

turned, within a reasonable time. There is nothing to indicate that they have not had all the advantages they could have had if the abandonment by Howard had been authorized. This series of acts by the underwriters shows that they treated the abandonment as valid. By the contract of insurance, the underwriter gets no property in the vessel, and no right of possession. It is a mere contract of pecuniary indemnification. He cannot interfere and take control of the vessel to prevent a loss, or to change the character of a loss. His right to possession and control is derived solely from the abandonment. The owner keeps control of the vessel and of the wreck, until he chooses to abandon it to the insurer, and he need not abandon in any case, unless he chooses to change the property in the remnants, into money. Even under the doctrine of the supreme court of Massachusetts, the insurer cannot take possession and repair, before there has been an abandonment. No case has gone the length to assert such a right. One reason given by the Massachusetts court for their rule is, that the insurer may show by the repairs, that the loss alleged to be over fifty per cent., was in fact, less than that amount. This assumes that the owner has abandoned. The acts of the respondents in this case, can, under neither rule, be reconciled with any other view than that they considered the vessel legally abandoned to them; and it seems that they had all the advantages of a valid abandonment. When both the insured and insurers have treated the abandonment as valid, an objection by the insurers to its original validity, becomes little else than a formal objection.

I will now look at the acts of the owners, to see if they did not, in fact, make a seasonable notification. The owners and underwriters, the master and most of the crew, and Mr. Tarr and Capt. Reed, all reside in Gloucester. It is not a very large place, and it is quite improbable that the owners did not know of the facts as they occurred. The vessel was brought to Gloucester, kept in the possession of the respondents some six weeks, undergoing such repairs as the respondents thought proper. The owners did not interfere or object to any of these acts. The course of conduct on both sides can only be reconciled with one hypothesis, and that is that each understood that the vessel was abandoned and a total loss claimed, and that the only question was, whether the facts were such as to justify it. After such an acquiescence, the owners would not be permitted to deny the authority of Howard, and treat the insurers as trespassers. Since the decision of Peele v. Merchants' Ins. Co. [supra], a clause has been introduced into the Boston policies, and is found in this policy, in the following words: "The acts of the insured or insurers, in recovering, saving, and preserving the property insured, in case of disaster, shall not be considered as a

waiver or acceptance of an abandonment." The respondents have referred to this clause as justifying their acts. But the object of this clause is to enable either party, after an abandonment, to labor in rescuing and preserving property, without fear of the effect of their acts as evidence of an acceptance or waiver. The clause supposes an abandonment. The acts of the underwriters in getting off the vessel and bringing her to Gloucester, including temporary repairs for that purpose, might be protected by that clause of the policy. But they went much further. Having brought the vessel to the home port, they kept possession of her for six weeks, and made repairs of a permanent character, confessedly for the purpose of tendering her back to the owners as a fully repaired vessel. These acts are not protected by the clause. Such seems to have been the view of this clause taken by the supreme court of Massachusetts.

It is argued that the implied authority given to Capt. Howard to sell, was only for the purpose of obviating the effect of a restriction specially introduced into this policy, in these words,—"In case of loss in the Bay of St. Lawrence, no sale of the vessel to be made on their (insurers') account," and to leave the master to act as by the common maritime law. But the restriction is not on his right to sell as master, on the owner's account, but upon sales on the insurers' account, after abandonment. A release from that clause authorizes a sale on the insurers' account, and implies an abandonment. Moreover, the despatch is not confined to authorizing a sale. It gives orders in answer to his request for orders, as to what shall be done with the vessel and her outfits, in case she is not sold. There is another view that may be taken of this matter of the abandonment. Subsequent events, after an invalid abandonment, may justify a new one; as condemnation after capture, or new events altering the nature of the original loss. Now, I am by no means certain that, if there had been no valid abandonment before the insurers got off the vessel and brought her to Gloucester, their subsequent acts, which amounted to a conversion of the vessel to their own use, would not have justified a new original abandonment. The offer to return the vessel is accompanied by a claim upon the owner for the payment of a sum of money to be afterwards ascertained. The letter of the libellant's proctor treats this as a conditional offer. He desires to know what the amount is, which his clients are required to pay, saying that if it is not too large, and that if the vessel is found sufficiently repaired, they may, waiving no right, be willing to accept the vessel, as a compromise. The reply of the respondents does not waive this demand. I am of opinion that there has been a sufficient abandonment, treating Capt. Howard only as master. On this abandonment, the acts of the respondents are in law, an acceptance. It is not therefore necessary to go into the other questions which have been opened. On the point of jurisdiction, I consider the jurisdiction of the admiralty over policies of insurance to be the settled law and practice of this circuit. Decree for the libellant, for a total loss.

The court directed the question of jurisdiction to be first argued; and it was argued by R. H. Dana, Jr., in support of the jurisdiction, and by F. C. Loring and S. Bartlett, contra.

CURTIS, Circuit Justice. In Delovio v. Boit [Case No. 3,776], decided in 1815, Mr. Justice Story, after an elaborate and very learned examination of the subject, held that the admiralty jurisdiction of the district courts of the United States extended to suits on policies of insurance. In Peele v. Merchants' Ins. Co. [Id. 10,905], in the year 1822, the question was again before him, he reaffirmed the jurisdiction, and made a decree for the libellant. An appeal was taken, but for some cause was not prosecuted to a hearing before the supreme court. In Hale v. Washington Ins. Co. [Id. 5,916], in 1842, that learned judge again declared that he adhered to the doctrine of Delovio v. Boit, and he again made a decree, in a suit in the admiralty founded on a policy of insurance. In numerous cases, in this circuit, the doctrines of Delovio v. Boit [supra], have been still further examined and affirmed. Andrews v. Essex F. & M. Ins. Co. [Case No. 374]; Plummer v. Webb [Id. 11,233]; The Tilton [Id. 14,054]; The Volunteer [Id. 16,991]; The Tribune [Id. 14,171]; Drinkwater v. The Spartan [Id. 4,085]; Steele v. Thacher [Id. 13,348]; The Huntress [Id. 6,914]. And, so far as I am informed, the jurisdiction has not been here questioned. On the other hand, it must be admitted, that, either from want of confidence felt by the bar, in the ultimate establishment of the jurisdiction by the supreme court of the United States, or from some other cause, the jurisdiction of the admiralty over policies of insurance has been very infrequently resorted to. It is believed that since Peele's Case, a libel on a policy of insurance has not been filed in this district, where the amount in dispute would allow an appeal. Though this question has never come before the supreme court of the United States, other inquiries concerning the extent of the admiralty jurisdiction conferred by the constitution, have there arisen, and given rise to great research and much acute criticism. They have resulted in pretty wide differences of opinion among the individual judges. Waring v. Clarke, 5 How. [46 U. S.] 441; New Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. [47 U. S.] 344; The Genesee Chief, 12 How. [53 U. S.] 443. In Cutler v. Rae, 7 How. [48 U. S.] 729, it was held by a majority of the court, that a

libel, in personam, would not lie by the owner of a ship against one of the consignees of cargo, who had received his goods, to recover a sum of money, due by way of contribution to a general average loss. This decision certainly goes pretty far towards overruling the decision in Delovio v. Boit, and is undoubtedly irreconcilable with some of the positions which are reported therein. But it does not cover the precise question, whether a policy of insurance is one of those maritime contracts, which are within this jurisdiction. It rests on the ground, that after the goods have been surrendered to the consignee, the lien is gone, and therefore there is not admiralty jurisdiction to enforce a lien; and that the promise by the consignee to contribute, is implied, if at all, by the common law; that it is not a creature of the admiralty law, and is not to be enforced in a court of admiralty. All this may be true, and yet a policy of insurance may be such a maritime contract as comes under the jurisdiction of the admiralty, while an implied promise to contribute in general average does not. Undoubtedly, it would be somewhat remarkable, if the admiralty were held not to have jurisdiction over an implied promise to contribute to a general average loss, but to have jurisdiction over an express promise to do so; or that it had not jurisdiction over an express promise to contribute to such a loss, but had jurisdiction over an express promise, in a policy of insurance, to indemnify one for what he might be obliged to contribute. Still, an inquiry into the extent of the admiralty jurisdiction, under the constitution of the United States, is, to some extent, at least, an historical question; and whether a particular class of contracts is within that jurisdiction, is to be determined, not by reasoning a priori, but by examining into the actual extent of that jurisdiction, as exercised in this country prior to the formation of the constitution. This may lead, as, comparing the cases of New Jersey Steam Nav. Co. v. Merchants' Bank, and Cutler v. Rae, and The Genesee Chief [supra], it may, perhaps, be said, it has led, to theoretical anomalies, which can scarcely be reconciled, but which may, nevertheless, be sound deductions from correct premises.

The preliminary question which I have to determine is, whether I ought to examine this subject, and pronounce my own individual opinion thereon; or whether, sitting here, I should allow the question, which has been thus decided by my very learned and distinguished predecessor, and which has been so long settled in this circuit, to remain, as he left it, until it shall come before the supreme court of the United States. I confess I have felt not a little doubt concerning what my duty requires of me; but I have come to the conclusion, that, sitting here, I shall best discharge my duty by treating the inquiry as to the jurisdiction as not to be further gone into on the circuit, holding myself free to go into it at large, and with all the aids of more recent investigations, when it shall arise in the appellate court. The objection to the jurisdiction is, therefore, overruled, and the case must be heard on its merits.

The cause was then argued on its merits, by S. Bartlett and F. C. Loring, for appellants, and R. H. Dana, Jr., contra.

CURTIS, Circuit Justice. This is an appeal from a decree of the district court, in the admiralty, founded on a policy of insurance. The question of jurisdiction has heretofore been raised and decided. The appeal comes before me under an agreement of the parties, which is as follows: "It is agreed that the first of the above-named causes shall be tried in the district court, and that if either party is dissatisfied with the decision of the court upon any question of law, he shall have the right to appeal, but that the findings of the court upon matters of fact shall be conclusive, and that no evidence shall be introduced in case of appeal in the appellate court, except the opinion of the judge of the district court on a statement of facts made thereon; but all questions of law, including inferences of law from facts proved, are to be open on appeal. The other cases shall be continued to abide the result of the one tried, and decrees therein shall be entered accordingly without appeal. Provided, however, that if in the case tried, the libellant shall fail on any technical objection or matter of form or proof not decisive of the other causes, they may be opened in the district court so far as those objections are concerned."

The substance of the agreement between the parties is, that no question of fact is to open on this appeal, but the law arising on the facts found, shall be here reviewed. I do not approve of this mode of bringing admiralty appeals before this court. It is, substantially, the mode originally provided for by the twenty-second section of the judiciary act of 1789 (1 Stat. 84), but was found to be attended with so many difficulties, that the act of March 3, 1803 (2 Stat. 244) gave an appeal. See Wiscart v. Dauchy, 3 Dall. [3 U. S.] 321; Oliver v. Alexander, 6 Pet. [31 U. S.] 143. Some of these embarrassments are felt in this case. The respondent's counsel insist that, inasmuch as all questions of law are agreed to be open on the appeal, they have a right to take the opinion of this court, upon those matters of law which determined or influenced the district court to find the facts. Certainly, all legal questions, belonging to the case, cannot be here raised and decided, if these are excluded. But they must be excluded, to execute the agreement of the parties to produce no evidence here and make the finding of the district court of all matters of fact conclusive. They

would no more be conclusive, if open to objection by reason of alleged errors of law, than they would be if either party were at liberty to insist that the evidence did not warrant the conclusions of the district court. Indeed, this is, in substance, the real objection made; for that objection is, that upon correct principles of law, the evidence does not warrant the conclusions of fact made by the court below. But I am of opinion that the agreement of the parties precludes the respondents from all objections to the findings of the district court concerning any matter of fact. I offered to discharge the agreement in the case and allow it to stand open on the appeal, but as neither party desired this, I have taken the case into consideration, and will decide it,—but I wish it to be understood that I have encountered much embarrassment in doing so, and shall execute a similar agreement hereafter with much reluctance, if at all. An appeal in the admiralty should come before this court, either upon the evidence, or upon an agreed statement of facts.

On examining the opinion of the judge of the district court it appears he has found: (1) An offer by the master to abandon the interest of the assured in the vessel, seasonably ratified by the assured. (2) That the insurers took possession of the vessel for the purpose of repairing and restoring it to the insured, and in the execution of that intention, brought the vessel to the home port and there made repairs rendered necessary, by perils within the policy.

The fact that an offer of abandonment was seasonably made, by the ratified act of the master being found, the principal question is, whether this offer of an abandonment was accepted by the insurers. There can be no doubt, that if what was done by them was in the exercise of rights derivable only from an accepted offer of abandonment, their acts are conclusive evidence of such acceptance. Peele v. Merchants' Ins. Co. [Case No. 10,905]; Badger v. Ocean Ins. Co., 23 Pick. 355; Griswold v. New York Ins. Co., 1 Johns. 205, 3 Johns. 321; Maryland & P. Ins. Co. v. Bathurst, 5 Gill & J. 235. Upon the same principle the supreme court held that an offer of abandonment would be waived by an assertion of ownership inconsistent therewith. Chesapeake Ins. Co. v. Stark, 6 Cranch [10 U. S.] 272; Columbian Ins. Co. v. Ashby, 4 Pet. [29 U. S.] 144. Nor is there any doubt that this court decided, in Peele v. Merchants' Ins. Co. [supra], that if the insurer take and retain possession of the vessel for the purpose of repairing it, he does thereby accept an offer of abandonment. But the insurers insist, that the contract in question was made, and was to be executed in the state of Massachusetts; and that by nature of the law of that state, the insurers had, under this policy, a right to take possession of the vessel when an offer of abandonment was made, and seasonably repair and restore it to the insured, and thus perform their contract. It must be admitted that the law of the place of this contract determines the rights which the insurers have, upon an offer to abandon; and also that the supreme court of Massachusetts have held that the insurer has the right which is here insisted on. But this court held in Peele v. Merchants' Ins. Co., that the insurer had no such right. And this being a question, not of mere local municipal law, but arising under the law merchant, though this court must consider with unaffected respect the decisions of that court, on this question, yet they are not binding on our judgments, and we have no right to conform to them, when we believe they do not announce the true rule. This is the settled doctrine of the supreme court of the United States, and has been frequently applied in this court. Swift v. Tyson, 16 Pet. [41 U. S.] 1; Carpenter v. Providence Washington Ins. Co., Id. 495; Foxcroft v. Mallett, 4 How. [45 U. S.] 379; Williams v. Suffolk Ins. Co. [Case No. 17,738]. Being satisfied of the correctness of the decision of this court in Peele v. Merchants' Ins. Co., and of its conformity with sound principles, I cannot overrule it, because the highest court of the state has, subsequent to that decision, taken a different view of the rights of insurers. The laws of the place of the contract being the general law merchant, I am bound to declare that in my opinion, it did not confer on the underwriter the right claimed, to take possession on an offer of abandonment, and repair and restore the vessel, and thus perform his contract.

It has been argued, that these decisions of the supreme court of Massachusetts, are evidence of a local usage by which this contract should be governed. A judicial decision, founded on a local usage, may be evidence of its existence at the time the decision was made. Cookendorf v. Preston, 4 How. [45 U. S.] 326. But the supreme court of Massachusetts have not rested their decisions upon any local usage, but upon their understanding of the principles of mercantile law. It is also urged, that we may fairly presume that a practice, in conformity with these decisions has grown up, amounting to a local usage. If this argument were so far sound as to determine this case, it would preclude all inquiry in every case, as to the correctness of any decision respecting any contract, where time enough had elapsed since it was made to have a practice in conformity with it, obtain. No doubt it is a strong argument against overruling a decision, that it has been practiced on, and rights acquired in conformity with it. But this is a practical view only; and I have never understood that there was also a theoretical objection, quite conclusive, if well founded, that the decision proved a local usage, which, though not in pursuance of a rule of law, bound the parties. I do not think any such effect can be allowed to a decision, which professes to de-

clare a rule of commercial law. It must stand or fall upon its reasoning and its authority, not upon the strength of a local usage supposed to have grown up under it. And especially must this be so, where, as in this case, there is no presumption that there has been any other practice than to conform to the law of the land on the subject, and the very question is, what that law allows. Nor do I think the clause giving to each party, the right to act in recovering, saving, and preserving the property insured, confers on the insurer the right here claimed. It seems to me to have no reference to any other repairs, than such as may be needful for the temporary preservation of the property, and its relief from perils within the policy. And such I understand to have been the view taken of it in Reynolds v. Ocean Ins. Co. 1 Metc. [Mass.] 160. I am also strongly inclined to the opinion that the respondents do not bring the case within the rule held by the supreme court of Massachusetts. For they did not tender the vessel to the insurer, except upon condition of his paying a part of the expense of the repairs. As I understand that rule, the insurer has not the right to prescribe this condition; but I would not be understood to speak with confidence concerning it. Considerable embarrassment in the application of the rule would seem to exist, in a case like the present, where a part owner obtains separate insurance. But I do not rest the decree on this ground, and therefore do not pursue the inquiry. Decree of the district court affirmed.