INSURANCE CO. OF PENNSYLVANIA *v.* PROCEEDS OF THE SALE OF THE BARGE WAUBAUSHENE.

*(Circuit Court, N. D. New York. July 21, 1885.)*

MARINE INSURANCE—CONTRACT, WHERE MADE—LIEN FOR UNPAID PREMIUMS—MARITIME LIEN.

    No maritime lien exists in favor of underwriters for unpaid premiums of marine insurance. Opinion of district judge (22 FED. REP. 109) affirmed.

Appeal from District Court. See 22 FED. REP. 109.

*Williams & Potter*, for appellant.

*Marshall, Clinton & Wilson*, for appellee.

WALLACE, J. In deciding against the application of the insurance company to be paid the premium due upon the marine policy issued by it upon the barge out of the proceeds arising from her sale in the registry of the court, the learned judge of the district court held that the contract for insurance was made in Canada, and the rights of the parties to a lien were controlled by the *lex loci contractus*. He also held that such a lien is not recognized by our jurisprudence, and that the statutes of this state creating a lien for premiums in favor of underwriters do not apply to foreign vessels. He therefore held that as the company had no lien by the law of Canada, it could assert none here. These conclusions are fully approved, and it seems superfluous to attempt to re-enforce the reasoning of the very able and careful opinion of the district judge further than briefly to indicate the reasons which have led this court to deny the existence of the maritime lien for insurance premiums. As early as 1815 Mr. Justice STORY decided, in *De Lovio* v. *Boit*, 2 Gall. 398, that a policy of insurance upon a vessel was a maritime contract, in an opinion which has been characterized as "a learned and elaborate essay on admiralty jurisdiction, and one of the most luminous views of the subject extant." 2 Hoff. Leg. Stud. (2d Ed.) 465. Although the doctrine of that case was not uniformly accepted, (*Ramsay* v. *Allegre*, JOHNSON, J., 12 Wheat. 638; *Jackson* v. *The Magnolia*, CAMPBELL, J., 20 How. 335,) the jurisdiction over such contracts was always maintained subsequently in the First circuit, and was generally approved by commentators of authority. *Gloucester Ins. Co.* v. *Younger*, 2 Curt. 322; *Hale* v. *Washington Ins. Co.* 2 Story, 176; Dunl. Adm. Pr. 43; 1 Kent, Comm. 370, note; Ben. Adm. § 294; Conkl. Pr. 13. Yet until the decision in *The Dolphin*, 1 Flippin, 580, as is conceded in the opinion of the court in that case, the general understanding of the profession was adverse to the existence of a lien for the premium secured by such a contract. In that case, reasoning from analogies, and influenced by the views recently declared by the learned judge of the Sixth circuit, that every maritime agreement, upon principle, should bind the ship as well as the owner, (*The Williams*, Brown, Adm. 208,) the court held that the lien should be recognized as extending to the premiums for insurance. It was said by Mr. Justice CURTIS, (*The Kiersage*, 2 Curt. C. C. 424,)—

"To be a settled rule that privileged liens, constituting a *jus in re* accompanying the property into the hands of *bona fide* purchasers and operating to the prejudice of general creditors, are matters *stricti juris*, which cannot be extended from one case to another argumentatively, or by analogy or by inference."

And he cites Pardessus, (3 Droit, Comm. 597, 598,) when reasoning on the policy of allowing a privilege for premiums of insurance:

"Analogy cannot afford a decisive argument, because privileges are a strict right. They are an exception to the rule by which all creditors have equal rights in the property of their debtor, and an exception should be declared and described in express words; we cannot arrive at it by reasoning from one case to another."

The same citation is quoted with approbation by Mr. Justice GRIER in *Vandewater* v. *Mill,* 19 How. 89. Although the proposition is generally true that maritime contracts import an hypothecation of the ship for their performance, the important qualification must not be overlooked that the lien does not extend to contracts which do not aid the vessel, but are merely for the personal benefit of the owner. One reason why the master of a vessel, clothed as he is with almost plenary powers to represent the owner, extending even to the authority to sell the ship, when necessity justifies a sale, cannot enter into a contract for insurance, is because such a contract does not aid the vessel. It inures solely to the personal interest of the owner. Unlike contracts and engagements in which every lienholder has an interest, because they fortify his security, the contract of insurance contributes to no fund for the general benefit, and its fruits are monopolized by the owner. It has been held in this court that he is not required to surrender the insurance to a trustee, under the statutes limiting the liability of a vessel-owner for the benefit of those having claims against the vessel when the vessel is lost after liability accrues, (*In re Norwich & N. Y. Transp. Co.* 17 Blatchf. 221; *Thommesen* v. *Whitwill,* 21 Blatchf. 45; S. C. 12 FED. REP. 891,) because it is not an "interest" in the ship.

For the reasons, therefore, that a lien should not be extended to a contract to which it has not generally supposed to adhere, even if the analogies should justify recognizing it, and also because the contract of insurance is peculiarly distinguishable from the class of maritime engagements which import a lien, the court cannot follow the decision in the case of *The Dolphin.* The question of a maritime lien was not involved or discussed in the case of *The Guiding Star,* 9 FED. REP. 521, affirmed, 18 FED. REP. 263, cited as an authority in favor of the lien. The note of Mr. Flippin to the case of *The Dolphin* presents all the arguments for denying the existence of the lien, and for following the case of *The John T. Moore,* 3 Woods, C. C. 61, to which it is necessary to refer.

The decree of the district court is affirmed.