ALLIANCE INSURANCE CO. OF PHILADELPHIA *v.* PRODUCERS COTTON OIL CO., ET AL.

[67 South. 58.]

1. INSURANCE. *Marine insurance. Abandonment. Effect of acceptance. Acts constituting an acceptance. Duties of owner after loss. Provision of policy.*

The acceptance by an insurer of the abandonment of a vessel covered by his policy precludes him from insisting that she was not damaged or destroyed by reason of a peril insured against, or that she was not either an actual or constructive total loss. It is not necessary for this acceptance to be in express language, but it may result from the conduct of the insurer.

2. MARINE INSURANCE. *Duties of owner after loss. Provision of policy.*

Under a policy of Marine Insurance providing that upon loss, insured should endeavor to safeguard and recover the vessel insured, and upon recovery should repair her, and upon insured's failure to do so, insurer's repair of the vessel should not be a waiver or acceptance of an abandonment, the insurer was not authorized to raise the vessel and tender her to insured in her wrecked and damaged condition and claim the benefit of such provision.

3. MARINE INSURANCE. *Acceptance of abandonment.*

An offered abandonment may be accepted even when the assured has no right to abandon, and if accepted, it must be with its consequences.

APPEAL from the circuit court of Warren county.

HON. H. C. MOUNGER, Judge.

Suit by the Producers Cotton Oil Company and others against the Alliance Insurance Company of Philadelphia. From a judgment for plaintiffs, defendant appeals.

The facts are fully stated in the opinion of the court.

*Mclaurin & Armistead*, for appellant.

*Hirsh, Dent & Landau* and *Henry*, for appellees.

SMITH, C. J., delivered the opinion of the court.

The steamer Henry Sheldon, of which appellees were the owners, and the value of which was ten thousand five hundred dollars, was insured in several marine insurance companies for sums aggregating seven thousand dollars, one of the policies having been issued by the defendant herein, and was for the sum of one thousand dollars. George W. Neare, Gibbs & Co. were the general agents of all of these companies, and represented them in the matters covered by this litigation. On September 30, 1910, at four o'clock a. m., this steamer, while lying anchored in the canal at Vicksburg, sank in several feet of water. A few hours thereafter appellees' superintendant telegraphed Neare, Gibbs & Co. as follows:

"Steamer Henry Sheldon sank this morning at city landing about seven feet water in board fifteen feet out board I think she can be raised wire instructions immediately."

The answer to this telegram was in the following language:

"Telegram received. We wired agents Barnwell & Barbour Yazoo City to instruct owners to proceed to raise Sheldon as though boat were not insured. Please be guided accordingly."

A few days thereafter George H. Wilson, an agent of appellant, or rather a joint agent of all of the insurance companies interested, appeared on the scene, and, in connection with appellees, attempted to raise the vessel. There seems to have been no special agreement between appellees and Wilson in this regard, but appellees contributed toward the expense incurred; the work being done under the direction of Wilson. Before the vessel was raised, the river commenced to rise, and it became impossible to proceed with the undertaking; consequently it was abandoned, and Wilson left Vicksburg. In consequence of this rise in the river the vessel became practically submerged; whereupon, appellees, being of the opinion that they were entitled so to do, under the policy, served notice on Neare, Gibbs & Co. that they had abandoned her, and would claim payment under the policy as for a total loss. To this notice Neare, Gibbs & Co. replied, on October 15, 1910, as follows:

"Your favor of the 10th inst., inclosing alleged notice of abandonment for the several companies having policies on the steamer Henry Sheldon, received. As at present advised, we do not consider that the several companies are liable for the loss under their respective policies. If the loss has occurred by reason of any of the perils insured against, we shall expect you to conform to the conditions of the several policies so that we may be placed in full possession of all the facts as to the cause of such alleged loss in order that we may finally determine whether the respective companies are liable or not. The clause in the respective policies under sections five and eight clearly provide as to the obligation of the assured in case of loss and as to abandonment. We shall expect you to comply with the several provisions of the policies and cannot accept an alleged abandonment of the vessel, as at present advised, and must decline so to do. We beg to return the papers herewith

which you sent us, and also the papers sent us by you through Messrs. Barnwell & Barbour, of Yazoo City, Mississippi.''

On November 4th they again wrote plaintiffs that:

''Relative to the alleged loss of the steamer Henry Sheldon, we beg to say that, as the river is now very low, there must be some chance to raise and recover her. You have undertaken to abandon her, which we think you have no right to do, and have so advised you, and the companies have refused to accept such abandonment, and have also denied your claim for a total loss. We think, without prejudice to our respective positions, that joint action can be taken in an effort for the safeguard and recovery of the vessel. The policy makes this your duty, and in case of your neglect or refusal to do so, the insurers are authorized to recover and repair said vessel for your account. Any attempt of either party in so doing, the policy provides, shall not be considered a waiver, or acceptance of an abandonment, or an acknowledgement of liability by the companies. In view of these provisions, we think such joint action should be taken by the assured and the companies, the same to be done without prejudice to the rights of their party. We think this is a sensible business proposition, and make the suggestion with the hope that by so doing, trouble will be avoided to all concerned. Will you kindly let us hear from you as to your willingness to join us in such actions?''

Appellees having declined to participate further in any attempt to raise the vessel or to have anything further to do therewith, Wilson, acting for and on behalf of all the insurance companies, including appellant, returned to Vicksburg during the latter part of November, and succeeded in raising her. She was then placed by him in the possession of a dock company. On November 28th Neare, Gibbs & Co. tendered the vessel to appellees by means of the following letter:

"After having made an attempt to recover the steam-boat Henry Sheldon you neglected and refused to use any further effort for her safeguard and recovery. We therefore were compelled, solely for the purpose of raising the boat, to continue the effort without prejudice to the position we originally took, and in accordance with the conditions of our policies. The boat has been raised and is now in possession of the dock company at Vicksburg being held subject to your order and attention. You are responsible to us, as is the vessel, for the expense incurred in raising her. We expect to render you an account of the same and to have you make payment thereof. We have also heretofore and again, now advise you that we have nothing to do with the abandonment of the boat and that we are not in any way liable under our policy for the loss of this vessel. You are also further aware that it has been clearly shown by an examination of disinterested and competent men that the boat sank by reason of her unseaworthy condition."

Appellees declined to receive the vessel or to pay the dock company's fees, which company, probably at the suggestion, and certainly with the approval, of Neare, Gibbs & Co., had her libeled and sold for its fees; the dock company becoming the purchaser thereof at the sale, for the sum of five hundred and twenty-five dollars. These insurance companies expended something like three thousand five hundred dollars in raising the vessel and delivering it to the dock company. After purchasing the vessel, this dock company had her repaired and somewhat remodeled, at an expense of four thousand two hundred dollars.

The case was submitted to a jury, which returned a verdict for appellees, and there was a judgment accordingly.

The foregoing is a sufficient statement of the facts for an understanding of the points decided.

108 Miss. 38

Appellant very earnestly insists that the evidence demonstrates that this steamer sank, not by reason of any peril insured against, but solely by reason of her unseaworthy condition. Appellees while denying. this contention, insist that inquiry relative thereto is foreclosed for the reason that the steamer was abandoned by them, and this abandonment was accepted by the insurance companies. If this is true, then appellees were entitled to a peremptory instruction, and therefore the judgment rendered is correct without reference to any errors which the court below may have committed in the granting and refusing of other instructions.

The acceptance by an insurer of the abandonment of a vessel covered by his policy precludes him from insisting that she was not damaged or destroyed by reason of a peril insured against, or that she was not either an actual or a constructive total loss. It is not necessary for this acceptance to be in express language, but it may result from the conduct of the insurer. *Insurance Co.* v. *Copelin,* 9 Wall. 461, 19 L. Ed. 739; *Richelieu* v. *Boston Insurance Co.,* 136 U. S. 408, 10 Sup. Ct. 934, 34 L. Ed. 398; *Northwestern Transportation Co.* v. *Continental Ins. Co.,* C. C.), 24 Fed. 171; *Peele* v. *Insurance Co.,* 19 Fed. Cas. 98.; *Northwestern Transportation Co.* v. *Thames & Mersey Ins. Co.,* 59 Mich. 214, 26 N. W. 336; *Richelieu* v. *Thames & Mersey Ins. Co.,* 72 Mich. 571, 40 N. W. 758; *Peele* v. *Suffolk Ins. Co.,* 7 Pick. (Mass.) 254, 19 Am. Dec. 286; *Reynolds* v. *Ocean Insurance Co.,* 1 Metc. (Mass.) 160; *Marmaud* v. *Melledge,* 123 Mass. 176. Such an acceptance may result from the conduct. of the insurer, even though he did not intend thereby to accept the abandonment, but, on the contrary expressly refused so to do. *Reynolds* v. *Ins. Co., supra;* *Northwestern Transportation Company* v. *Continental Ins. Co., supra;* *Peele* v. *Insurance Co.,* 19 Fed. Cas. 98; *Gloucester* v. *Younger,* 10 Fed. Cas. 495; *Hume* v. *Frenz,* 150 Fed. 502, 80 C. C. A. 320.

There is no contention on the part of appellees that there was any express acceptance of the abandonment of this vessel; their contention being that a constructive acceptance results from the acts of appellant in raising and tendering her to appellees without repairing and putting her in the condition she was before she sank. The provision of the policy by virtue of which appellant raised the vessel is as follows:

"In case of loss resulting from any peril covered under the policy, the assured shall use every effort for the safeguard and recovery of said vessel, by employing such means as can be obtained for that purpose, and, if recovered, shall cause the same to be forthwith repaired; and in case of neglect or refusal on the part of the assured, or the agents or assigns of the assured, to adopt prompt and efficient means for the safeguard and recovery of said vessel, or to repair said vessel when recovered, then the said insurers are hereby authorized to interpose and have said vessel repaired if she has been recovered, or to recover said vessel and cause the same to be repaired for account of assured, to the cost of which, after making any and all deductions referred to in clause 6 of the printed part of this policy, said company will contribute in proportion as the sum herein insured bears to the agreed value stated in this policy; and the surplus (if any) paid and incurred by said assurers (with premium notes if unpaid) shall be a lien upon, and shall be recoverable against the said vessel or any part thereof, or against the assured, at the option of the assurers, and any acts of the assured or assurers, or of their joint or respective agent in preserving, securing, saving, or repairing the property insured, shall not be considered or held to be a waiver or acceptance of an abandonment or of acknowledgement of liability by the assurers."

Under this provision of the policy, when the vessel sank it became the duty of appellees to promptly recover

and repair it, and upon their failure so to do such right accrued to appellant. This right it could exercise or not according as it should deem best; but, when it elected to exercise it, it thereby became its duty to do that which the assured had failed to do; that is, to recover the vessel and cause it to be forewith repaired. See authorities *supra.*

Taking possession of the vessel for any purpose other than that of recovering and repairing. her was not authorized, nor was there any authority given appellant to recover the vessel and tender her to appellees in her wrecked and damaged condition; the only authority given it being to recover the vessel ''and cause the same to be repaired.'' Since appellant did not repair the vessel after recovering her before tendering her to appellees, it thereby failed to discharge its full duty under the policy, and consequently it is not entitled to the protection of the provision here in question. Neither the law nor this provision of the policy contemplates that the insurer ''can take possession of the ship and decide for the owner what shall be done with her.'' (*Peele* v. *Insurance Co.,* 19 Fed. Cas. 98); but, on the contrary, when the insurer takes possession he is under the duty of disposing of the vessel in the manner provided by the policy, and, in default thereof, is held to have accepted the abandonment.

It follows from the foregoing views that appellant's conduct with reference to the vessel can be justified only on the theory that the abandonment had been accepted; for it is well settled that ''any act of the underwriters in consequence of an abandonment, which could be justified only under a right derived from it, may be decisive evidence of an acceptance.'' *Richelieu* v. *Insurance Co.,* 136 U. S. 408, 10 Sup. Ct. 934, 34 L. Ed. 398, *Peele* v. *Insurance Co.,* 19 Fed. Cas. 98; *Gloucester Ins. Co.* v. *Younger,* 10 Fed. Cas. 495.

The case of *Richelieu* v. *Insurance Co.*, 136 U. S. 408, 10 Sup. Ct. 934, 34 L. Ed. 398, so much relied on by appellant, is not in conflict with the views herein expressed. In that case the refusal of the lower court to grant the plaintiff's instructions relative to alleged acceptance of the abandonment was approved, for the reason that these requested instructions were not supported by evidence, the court saying that:

"As it is not contended that there was any evidence of actual acceptance, and as it clearly appeared that the rescuing expedition was sent before the telegraphic notice of abandonment was given, and as the evidence did not tend to show that that expedition was sent with the intention of rescuing 'and repairing' the Spartan, or that the insurers brought the Spartan to Detroit (if they did bring her), with the intention of 'repairing her,' each one of the requested instructions was objectionable."

The court further said with reference to the repairing of the vessel after her recovery:

"The plaintiff insists that, although the captain moved the Spartan to Detroit and placed her in the dry dock, and to some extent, if not wholly, superintended the repairs, the plaintiff was not bound by his action, because he was not employed by it, but by the charterers, and that the master, after abandonment, becomes the agent of the insurers."

We have examined all the cases relied on by appellant, and do not think that any of them, except probably the case of *Sheppard* v. *Henderson,* 7 Appeal Cases, 49, support its contention. If *Sheppard* v. *Henderson,* an English case, is in conflict with the views herein expressed, it is not in accord with the American authorities.

The particular clause of the provision of the policy here in question relied on by appellant as preventing its acts in raising the vessel and tendering her to appellees

in her wrecked and damaged condition from resulting in a constructive acceptance of the abandoment is that:

"Any acts of assured or assurers or of their joint or respective agents, in preserving, securing, saving, or repairing the property insured, shall not be considered or held to be a waiver or an acceptance of an abandonment or of an acknowledgement of liability by the insurers."

In *Northwestern Transportation Co.* v. *Insurance Co.* (C. C.), 24 Fed. 177, it was pointed out that this clause was added to marine insurance policies because of the holding of Mr. Justice STORY in *Peele* v. *Insurance Co.*, 19 Fed. Cas. 98, that the mere act of the insurer in taking possession of an abandoned vessel operated *ipso facto* as an acceptance of the abandonment. It was there said that:

"In consequence of the decision of Mr. Justice Story, the policies were amended so as to provide that the acts of the insured or insurers in recovering, saving, and preserving the property should not be considered a waiver or acceptance of the abandonment. . . . The object of the clause in the policy was to prevent the mere act of taking possession and rescuing the property being treated as *ipso facto* an acceptance of the abandonment. The companies wished to reserve the right to raise, repair, and restore the vessel within a reasonable time. But in the Peele Case it was held that they were not at liberty to touch her in any way without being held as accepting the abandonment. The policies now not only give them the right to interpose to recover the vessel, but in case the owner should do this, and then refuse to repair, the underwriters may then, after recovery, cause the same to be repaired for account of the insured; but, having once made their election to raise the vessel, we do not understand that they are at liberty to stop short of full performance, or to tender her back to the owners without complete indemnity for the loss."

Moreover, this clause was contained in the policies sued on in most of the cases hereinbefore cited, that were decided after the decision of the Peele Case.

"The defendant claims," however, in the language of one of the briefs of its counsel, that "it was too late for the plaintiffs to abandon after they had joined with the underwriter in attempting to raise the vessel, and where such attempt has induced the underwriter to expend a considerable sum of money in such effort." In support of this we are referred to the case of *Peele* v. *Insurance Co.*, 19 Fed. Cas. 112, where it was said by Mr. Justice Story:

"Let me add, also, that according to my impression of the established law, if the abandonment had not been made at this time, but had been postponed until the vessel had become a technical wreck, or had been got off at an expense exceeding three-fourths of her value, the plaintiffs could not then have elected to abandon, for they would not have had a right to lie by and speculate upon events. The delay to abandon would have been fatal. (Cases cited). So that the plaintiffs must either have abandoned at the time when they had notice of the loss, or they would have been forever concluded."

We are also referred to the case of *Smith* v. *Insurance Co.*, 4 Mass. 669, wherein it was said by Mr. Justice Parsons that:

"The owner must abandon within a reasonable time after notice. He shall not delay for the purposes of speculation, or wait for further intelligence to guide him in his speculations. What is a reasonable time must depend on facts. When the facts are agreed or found, it is a question of law."

Conceding, for the sake of the argument, that the rule announced in these cases is correct, appellant can receive no benefit therefrom, for the reason that it relates only to the right to abandon, and not the effect, or what constitutes an acceptance, thereof. "It is well settled, . . .

that an offered abandonment may be accepted, even when
the assured has no right to abandon, and, if accepted,
it must be with its consequences." *Phenix Ins. Co.* v.
*Copelin, supra.*

It follows from the foregoing views that the court be-
low should have granted the peremptory instruction re-
quested by appellees.

*Affirmed.*