FIREMEN'S FUND INS. CO. v. GULF TRANSP. CO.

(Division B. March 10, 1924. Suggestion of Error Overruled April 21, 1924.)

[99 So. 515. No. 23540.]

1. INSURANCE. *Duty of insurer electing to repair property stated.*

When a barge is injured in a storm at sea, and is insured against perils of the sea, when the insurance company, instead of paying the indemnity provided for in the policy, with the consent of the owner elects to repair the barge, it thereby becomes the duty of the insurance company to place the barge in as good condition as it was before being injured in the storm at sea. Complete indemnity is the contract of insurance.

2. JUDGMENT. *Action by insured against insurer repairing barge for damages in second disaster on account of inadequacy of repairs held not barred by action for repairs paid by insurer.*

Where a barge which is insured against perils of the sea is injured in a storm, and the insurance company attempts to repair the barge instead of paying the insurance in accordance with the policy, and then through its agent issues a certificate of seaworthiness to the owner who has paid the contractor for repairing the barge upon the request of the insurance company, and thereafter the insurance policy is reinstated, and the barge

then sinks in smooth waters, a suit, first, for the amount of repairs paid at the instance and request of the insurance company, and, second, upon the reinstated policy for the second disaster, in which a recovery is allowed for the amount spent in repairs, and denied because the second disaster was not due to a peril of the sea and therefore not covered by the policy of insurance, does not preclude a second suit for damages because of the inadequacy and insufficiency of the repairs made by the insurance company on the barge.

3. ELECTION OF REMEDIES. *Judgment. Suit for repairs on barge held not res judicata of second suit for damages for inadequacy thereof; suit against insurer for amount of repairs on barge subsequently sunk for inadequacy thereof held not election of remedies; suit against insurer for repairs and for inadequacy thereof held not a splitting of cause of action.*

The first suit is not *res adjudicata* of the second; neither was there an election of remedies in the institution of the first suit, but merely a mistake as to the correct remedy; neither was there a splitting of the cause of action, nor is the complainant estopped from maintaining the second suit.

APPEAL from chancery court of Harrison county.

HON. V. A. GRIFFITH, Chancellor.

Suit by the Gulf Transportation Company against the Firemen's Fund Insurance Company. From a decree for plaintiff, defendant appeals. Affirmed.

See, also, 121 Miss. 655, 83 So. 730, 9 A. L. R. 1307.

*White & Ford, Henry P. Dart,* and *Wells, Stevens & Jones,* for appellants.

I. The Plea of *Res Adjudicata* was Well Taken and Constitutes an Absolute Bar to the Present Action.

1. *Same parties, cause of action and issue here presented.*

Here the two suits are between the same parties. Both actions are founded upon the same insurance policy. Loss or damage is claimed for the same disasters. Of course, the same barge is involved. At the time the present action was instituted appellee was in possession of all the

known facts and claimed damages for both disasters or mishaps. The same evidence which controlled the former proceeding controls the present. Certainly the same evidence is before the court in both actions. This being true, we submit a very clear statement of the rule as found in *Union Central Life Insurance Company* v. *Drake,* 214 Fed. 536, an opinion by the circuit court of appeals for the eighth circuit.

We get at once, therefore, to the question whether this is a "different cause of action." We respectfully submit that it is not. An attempt is made to charge fraud and negligence in the repairing of the barge, but we submit the action is essentially upon the marine policy of insurance. The insurance company was not in the shipbuilding business and entered into no contract to repair or rebuild the barge. On the contrary, the written contract was expressly between appellee and Weaver. Weaver is not a party to this action and appellee had an opportunity to take his deposition and declined to do so. This fact is referred to in the former opinion of the court. No fraud or failure is charged against the contractor. Wherein, then, does the action in tort lie? Appellee is driven to the position that the plans and specifications were improper. But nowhere does appellee point out wherein the plans are defective or unscientific. This, therefore, in the first place, is not an action in tort because the amended bill is insufficient to make it so. Mere allegations of fraud and gross negligence are insufficient to state a case. The only possible theory under which the amended bill states a case, is to regard it as an action upon the policy of insurance and a claim for a total loss of the vessel under the policy. In the former action, the court denied the very recovery here sought. The very matter now in issue was indirectly presented by the pleadings in the former suit. The same testimony now relied upon was relied upon in the first suit. This, we submit, therefore, is the same cause of action or at least a part of the same cause of action presented in the former

proceeding. For further statement of the law, see *Vinson et al.* v. *Mortgage Company,* 116 Miss. 59; *Commercial Electric Supply Co.* v. *Curtis,* 288 Fed. 657.

2. *Former judgment was conclusive against both parties.*

The rule of law for which we contend, of course, works both ways. The former judgment is conclusive against the insurance company as well as the assured. This is very well reflected by Mr. Parsons in his work on Marine Insurance, Vol. 2, pages 490-1. See Note 1 to the text on page 491. See, also, *Hendy* v. *Gray,* 93 So. 614.

It is a well-known rule of law that every fact necessarily put in issue in a former suit is binding upon the same parties in a subsequent action, even though the latter may be termed a different cause of action. All of the rules are stated by Judge SANBORN in *Pierce* v. *National Bank of Commerce,* 268 Fed. 487.

Under the third rule stated by Judge SANBORN it is clear to our minds that the issue of structural weakness was directly presented in the former suit and there litigated and decided adversely to appellee company. The testimony clearly supports the fact and gives the only reasonable hypothesis or explanation for the failure of the barge to stand up under the heavy weight of her cargo.

To the same point is the case of *Southern Pacific Railroad Co.* v. *United States,* 42 L. Ed. 355.

Not only may an insurance company invoke the general rule of law under discussion but even a judgment rendered in a foreign country is conclusive and judgments of a Court of Admiralty on Marine Insurance policies are conclusive. *Cucullu* v. *The Louisiana Insurance Co.,* 5 Mart. (N. S.) 464, 16 Amer. Rep. 199. Note to *Dunstan* v. *Higgins,* 20 L. R. A. (N. S.) 668. To the same point are other cases in this note, including the Mississippi cases of: *Agnew* v. *McElroy,* 10 S. & M. 552; *Johnson* v. *White,* 13 S. & M. 587; *Weathersby* v. *Pearl River Lumber Co.,* 88 Miss. 535; *Moseby* v. *Wall,* 23 Miss. 83; *Perry* v. *Lewis,*

49 Miss. 443; Moody v. Harper, 38 Miss. 599; Smedes v. Iisley, 68 Miss. 590; Orr v. Wall, 28 Miss. 409.

We call particular attention to Home Ins. Co. v. Tate Mercantile Co., 117 Miss. 760, 78 So. 709. This case, we submit, is a complete answer to every contention made by appellee, or that can be made by appellee in this case. No litigant should be twice vexed with the same cause of action. The policy of the law is to put an end to litigation at some stage.

3. Hardy v. O'Pry differentiated.

Counsel in the lower court relied upon Hardy v. O'Pry. The case is in our judgment easily differentiated. There the first suit was for a breach of a contract to obtain an appropriation. The second suit was for a breach of a contract to pay for personal services as a stenographer. The causes of action therefore were different. This is the only Mississippi case out of which learned counsel for appellee seem to get any comfort whatsoever, and we respectfully submit that the Hardy case is not applicable there. In further support of our position see The Johnson Co. v. Wharton, 152 U. S. —, 38 L. Ed. 429; Mason Lumber Co. v. Butchel, 101 U. S. 638, 639, 25 L. Ed. 1074; 5 Joyce on Insurance, par. 3717.

We direct particular attention to the comparatively recent case of United States Fidelity & Guaranty Co. v. Tate County, 114 Miss. 7, 74 So. 769.

II. Appellee Cannot Split Its Cause of Action. 24 Standard Encyclopedia, page 300, treating the subject "Successive Suits" states the fundamental rule: "A single cause of action cannot be divided up into distinct demands and made the subject of separate actions." Many cases are cited in the footnotes in support of this text, including the Mississippi cases of Vicksburg Water Works v. Ford, 97 Miss. 198; McLendon v. Pass, 66 Miss. 110, 5 So. 234, Pullman v. Crisman, 59 Miss. 124.

We are not taking the position that the litigant cannot in any event split his cause of action but he does so at his

risk and the recovery of a less amount is a bar to any further recovery. 24 Standard Ency. Procedure, 302; *Insurance Co.* v. *Railroad Co.,* 44 Utah, 26, 35; Wells on Res Adjudicata, sec. 466, page 392; *Weber* v. *Railroad,* 36 N. J. 213.

III. The Splitting of One Cause of Action Bars a Subsequent Suit. As stated in 24 Standard Encyclopedia, page 202, such action "bars the recovery of the balance due at the time of the first action, the whole demand being treated as merged in the judgment." See, too, 15 Standard Ency. Procedure, page 515; *Lorillard* v. *Clyde,* 19 Am. St. Rep. 470, 473; 24 Amer. & Eng. Ency. of Law (2 Ed.), 786; *Kimball* v. *Louisville & Nashville Railroad Company,* 95 Miss. 396; *McKnight* v. *Minn. Street Railway Co.,* L. R. A. 1916D, 1164.

Of course, it makes no difference that the former proceeding was in equity. There is no effort to upset the former adjudication on the ground of fraud and the former decree stands. *McDonald* v. *Mobile Life Insurance Co.,* 65 Ala. 358.

IV. Appellee is Precluded from any Further Recovery upon the Doctrine of Election of Remedies.

While the election of remedies, sometimes known as "waiver by election," is a species of estoppel, it is distinguished from the usual doctrine of estoppel especially in the fact that an estoppel results from an act which may operate to the injury of another party, and sometimes carries an implication of fraud, while election does not.

There is nothing to prevent a plea of *res adjudicata* and a plea of election of remedies at the same time, and the two may conspire in defeating the cause of action. 20 C. J., page 4; *Kalberg* v. *Newberry* (N. D.), 170 N. W. 113, 117.

It is our purpose to show that the present action is not only concluded under the doctrine of *res adjudicata,* but that appellee has intentionally waived his right to prosecute the present suit. We concede that there must be an

inconsistency in the positions which appellee has taken. We furthermore cheerfully concede that there must be either an actual or implied intent to make an election. The doctrine that intent to make an election between inconsistent remedies is essential applies only where the action in the first instance is taken in ignorance of the facts. 20 C. J. 35. But a litigant must act with reasonable dispatch after learning the facts. Otherwise he will be conclusively deemed to have waived the right. This is the test. Measured by this test, as conclusively shown by the testimony, appellee had full knowledge of all the facts at the time the first suit was filed, and the benefit of a long series of negotiations looking toward a settlement of both claims, and the benefit of able legal advice.

In the light of all the facts, appellee elected to claim a total loss under the reinstated policy on account of an alleged peril of the sea. At this point the doctrine of estoppel *in pais* conspires with the doctrine of election of remedies, and appellee should be estopped and precluded under both doctrines. The authorities support our contention. *Arky* v. *Floyd,* 104 Miss. 364; *Mobile Towing and Wrecking Co.* v. *Hartwell,* 95 So. 191; *Brady* v. *State Insurance Co.,* 100 Neb. 497, 160 N. W. 882; *Foss* v. *Whitehouse,* 94 Me. 497, 48 Atl. 109; *Hussey* v. *Bryant,* 95 Me. 51, 49 Atl. 56.

The suit at bar is differentiated from the Mississippi case of *Conn* v. *Burnheimer,* 67 Miss. 492, and similar cases, where there was only one remedy available, and there was a fruitless attempt to prosecute an action not authorized by law.

V. Conceding, But Only for Argument, That the Bill of Complaint States a Different Cause of Action, the Decree Here Complained of is Not Supported by the Law or the Facts.

*Mize & Mize* and *George H. Murphy,* for appellee.

I. Was the barge seaworthy when she was first built and insured and was she seaworthy when she left Tam-

pico on the voyage on which she was injured by storm in the gulf in February, 1917, and had to put into Galveston for repairs?

The first question that arises is as to what seaworthiness is, and we shall give the definition laid down by all of the leading authorities on the subject. 5 Elliott on Contracts, sec. 444. We submit that the barge was seaworthy when constructed and at the beginning of the voyage from Tampico when she was injured by storm in the gulf in February, 1917, within the terms of the warranty of the policy.

II. _When the barge came into Galveston injured by storm in the Gulf of Mexico in February, 1917, did the insurance company thereupon obligate itself to make the repairs that were necessary on account of said injuries by storm to put the barge back in a seaworthy condition when repaired and represent to Fant that the repairs it proposed were sufficient to make the barge again seaworthy, and, on completion of these repairs, further represent to Fant that the repairs it had made had put the barge back in a seaworthy condition, and did Fant rely on these representations when he had the policy restored on said barge?

Anderson was the agent of the Firemen's Fund Insurance Company in his acts relating to the barge. For construction of statutes of this kind see 2 Joyce on Insurance (2 Ed.), sec. 517.

It was the duty of the insurance company to make, and it did obligate itself to make, the necessary repairs to put the barge back in a seaworthy condition. The case of *Northwestern Transportation Co.* v. *Continental Insurance Co.,* 24 Fed. 171, is a case on all-fours with the instant case as to a voluntary stranding, and lays down the duty of the insurance company, after a voluntary stranding as to repairs under the policy.

Having elected to repair the barge, rather than pay for the damage, they were bound to tender the barge back

to the owner repaired so as to be in a seaworthy condition. Having once made its election by its agreement to raise the vessel and to so repair the damage as to put her back in a seaworthy condition, the insurance company could not stop short of full performance, and this it expressly agreed to do when the barge came into Galveston damaged by storm. To the same effect is, 19 Am. & Eng. Enc. of Law (2d Ed.), 1062; 5 Joyce on Insurance, sec. 3049, page 5257. The case of *Northwestern Transportation Co.* v. *Insurance Company*, 24 Fed., *supra*, was cited by this court and the doctrine therein approved in the case of *Cotton Oil Co.* v. *Insurance Co.*, 108 Miss. 589. To the same effect is *Hume* v. *Frenz*, 80 C. C. A. 320.

The fact that the barge went down in the calm and placid waters of a ship channel, on her first trip after these repairs, with no marine peril existing, is sufficient to show to any court that these repairs did not restore her to the seaworthy condition existing before the damage by storm, for which these repairs were made, as the thing speaks for itself. If she had been put back in a seaworthy condition by these repairs, she would not have stranded under the conditions then existing.

III. If the Houston Ship Channel casualty of July 8, 1917, resulted from insufficient repairs made by the insurance company on the barge at Galveston, did the insurance company become liable to Fant for breach of contract, for insufficient repairs to said barge to make her again seaworthy, to an amount that would have been necessary to put said barge back in a seaworthy condition after her damage by storm in the gulf?

It becomes necessary to state what the relation of the parties was by reason of the making of the agreement at Galveston that the insurance company would take charge of the barge and make the repairs. The insurance company by this agreement obligated itself to make the repairs, and represented to Fant that the repairs pro-

posed by the plans and specifications of its agent, Anderson, would put the barge back in a seaworthy condition, and Fant relied on these representations. Such relations having been entered into between the parties made that agreement a builder's or repairer's contract, for a breach of which Fant had a cause of action if the insurance company failed to make the proper repairs.

Upon the completion of the repairs, the insurance company, through its agent, Anderson, represented to Fant that the repairs it had made had put the barge back in a seaworthy condition, and that Anderson, the agent of the insurance company, then gave a certificate of seaworthiness to the barge, which induced Fant to restore the policy in said insurance company to its full value, thirty-five thousand dollars, and to lease the barge to Charles Clark & Company for the carrying of oil, relying on the representations to him by the insurance company that the barge had been restored to seaworthiness by its repairs. Now, this certainly constitutes representations, or, rather, misrepresentations, concerning a material fact, by the insurance company, and a reliance by Fant on such misrepresentations, to his hurt, and a loss of his barge of the value of more than forty thousand dollars. As to what are material representations, see 1 Arnauld on Marine Insurance, pages 721-737.

The general rule is that if the insurer, under a policy of this kind, agrees to repair instead of paying the damage in money, the insurer, if it fails to make the proper repairs, becomes liable, not under the policy or in accordance with the terms of the policy, but as for a breach of contract to repair, or a builder's or repairer's contract. See *Morrell* v. *Irving Ins. Co.*, 88 Am. Dec. 396; *Wynkoop* v. *Niagara Fire Ins. Co.*, 43 Am. Rep. 686; *Fire Association of Philadelphia* v. *Rosenthal*, 108 Pa. 474, 1 Atl. 303; *Collins* v. *Aetna Ins. Co.*, 6 Fed. Cas. 117, 4 Benn. Cas. 766; *Beals* v. *Home Ins. Co.*, 36 N. Y. 522; *Heilman* v. *Westchester, etc. Co.*, 75 N. Y. 7; *Zalesky* v.

*Iowa State Ins. Co.,* 102 Ia. 512, 70 N. W. 187; *North-western Transportation Co.* v. *Insurance Co.,* 24 Fed. —.

Where an insurer agrees to rebuild instead of paying a money indemnity, the amount of money stipulated to be paid under the policy in case of damage ceases to be any standard for the measure of damages resulting from a breach of the agreement. The measure of damages is the cost of repairing or rebuilding where there has been a total failure, or the difference between the work as done and its value if it had been done according to the standard of that existing before the fire. *Hartford Ins. Co.* v. *Peebles Hotel Co.,* 27 C. C. A. 223. Even where a company elects to repair and then, after some delay, finally refuses to do so, it is liable for the damage resulting to the property from exposure to the weather during the delay. *American Central Ins. Co.* v. *Mc-Lanatham,* 11 Kans. 533; *Henderson* v. *Crescent Insurance Co.,* 35 L. R. A. (O. S.) 385.

Now, under the facts of this case, there is shown an express agreement between the insurance company and Fant that the company would repair the barge so as to put her back in a seaworthy condition, and, when the insurance company undertook to repair the barge under this express agreement, then its warranty to Fant to put her back in a seaworthy condition had to be complied with; and, besides, when it took possession of the barge and did the acts concerning the preservation and repair of the barge that the record shows it did, then the law enjoined on it the duty to make the vessel seaworthy again by its repairs.

IV. Was the former suit for sixteen thousand nine hundred sixty-four dollars and twenty-one cents for a refund of the money paid by Fant at Galveston for repairs for the injuries to the barge growing out of the storm, to which he was entitled under the terms of the policy and for the further sum of thirty-five thousand dollars for casualty in Houston Ship Channel of July

8, 1917, on the ground that the casualty in the channel was due to a marine peril within the terms of the policy, *res adjudicata* of the instant suit for breach of contract by the insurance company in its failure to make the barge seaworthy by its repairs at Galveston?

Nowhere in the former suit was there any allegation as to a breach of builder's or repairer's contract to repair the barge made by the insurance company at Galveston after the vessel came into Galveston damaged by storm, and recovery on that theory was nowhere sought in that suit. This brings up the question, what is *res adjudicata?* and, as to this, the underlying basis is that one should not be twice vexed for one and the same cause. Anything, whatever it may be called in legal phraseology, that has for its underlying basis the maxim that one should not be twice vexed for one and the same cause, constitutes *res adjudicata.* It may come in the nature or form of an estoppel or a waiver or a splitting of cause of action or an election of remedies. If this case is barred by Fant's former suit, the *res adjudicata* has to grow out of the theory of election of remedies, on the theory that Fant, at the time he filed the prior suit, had two or more coexistent and inconsistent remedies and chose one and cannot now choose another remedy. *Res adjudicata* cannot here exist on the ground of a splitting of a cause of action, as to be a splitting of a cause of action the second suit must grow out of the same transaction or the same state of facts as the first suit, to such an extent that all the claims could have been included in the first suit. There is no authority to the contrary of this. A familiar illustration of splitting a cause of action would be where a man was crossing a railroad track in a buggy and the train negligently injured the buggy and the man at the same time, and he sued for the damage to the buggy in one suit and then afterwards sued for his own injuries. There, of course, the two suits would be splitting the cause of action which he had for damages to the buggy and for his own personal injuries, and,

having filed suit for the damage to the buggy, he could not thereafter file suit for his personal injuries in a different suit. *Kimball* v. *L. & N. R. R. Co.*, 94 Miss. 396; *Union Central Life Ins. Co.* v. *Drake*, 131 C. C. A. 82.

So the recovery of the sixteen thousand nine hundred sixty-four dollars and twenty-one cents item presented in the former suit could not be a splitting of a cause of action for a breach of contract for repairs. From the foregoing it is clear that there can be no *res adjudicata* here growing out of splitting of a cause of action. Therefore, as we have said before, if the former suit is *res adjudicata* of the present suit, it must grow out of an election of remedies. We lay down the proposition that, when Fant brought the former suit, in which he claimed thirty-five thousand dollars for a total constructive loss under the terms of the policy, on the ground that the Houston Ship Channel casualty on July 8, 1917, was due to a marine peril, he mistook and misconceived his remedy, because the court said that no marine peril existed and he could not recover for the loss of his boat on that ground. See opinion of the court in the former suit, 83 So. 730.

Now, it may be said that, instead of bringing suit for breach of builder's contract for improper repairs made by the insurance company, Fant should have brought a suit under the terms of the policy for injury to the barge by storm in the Gulf in February, 1917. But this he could not have done, for, after the insurance company had agreed to repair after the damage by storm in the Gulf, and failed to repair, or improperly repaired the barge, Fant could not sue under the terms of the policy, but must sue for breach of the repair contract and not on the contract contained in the policy, out of which the builder's or repairer's contract grew. *Franklin Ins. Co.* v. *Hammel*, 5 Md. 170; *Beale* v. *Home Insurance Co.*, 36 N. Y. 522, affirming 36 Barb. 614. It cannot be gainsaid that, if there was an election of remedies by the bringing of the former suit, the former suit is *res adjudicata*

of the instant suit. On the other hand, it cannot be denied that, if the former suit was on a mistaken or misconceived remedy, it is not *res adjudicata* of the instant suit. To be an election of remedies there must be two or more coexistent and inconsistent remedies. Practically all of the well-considered cases lay this down.

To constitute *res adjudicata,* four things must exist: (1) Identity of the thing sued for; (2) Identity of the cause of action; (3) Identity of the persons; (4) Identity of the quality in the persons. *Creegan, et al.* v. *Highland, et al.,* 93 Miss. 481.

We will now first state the Mississippi cases that are authority on the subject of *res adjudicata* here: *Hardy* v. *O'Pry,* 192 Miss. 197. "The usual test for determining whether the cause of action in the two suits is the same is to ascertain whether the evidence necessary to maintain the one would authorize a recovery in the other. If not, the prior judgment is not a bar to the other." *Western Union* v. *Wilkins,* 68 Miss. 6; *Western Union* v. *McLaurin,* 70 Miss. 26; *Straw* v. *Railroad Co.,* 73 Miss. 447; *McCerren* v. *Railroad,* 75 Miss. 687. Supporting the *Hardy* v. *O'Pry case,* and cited therein, is the case of *Hubbard* v. *Flynn,* 58 Miss. 266. See, also, *Scully* v. *Lowenstein,* 56 Miss. 652; *Madden* v. *Railroad Co.,* 66 Miss. 258; *Bodenheimer case,* 77 Miss. 417; *Phelps* v. *Commodore,* 1 So. 833; *Insurance Co.* v. *Tate Mercantile Co.,* 117 Miss. 769.

Other jurisdictions show that the law of the land is in Fant's favor, on his contention that the first suit he brought is not *res adjudicata* of the instant suit. *Norton* v. *Huxley,* 13 Gray, 285; *Zimmerman* v. *Robinson & Co.,* 5 A. & E. Ann. Cas. 960; *Gas Co.* v. *Hutchinson,* 90 C. C. A. 547; *Cromwell* v. *Sac,* 94 U. S. 351, 24 Law Ed. 195; *Bierce Lumber Co.* v. *Hutchins,* 51 L. Ed. (U. S.) 828; *Barnsdale* v. *Waltemeyer,* 73 C. C. A. 515; *Fuller-Warren Co.* v. *Harter,* 53 L. R. A. (O. S.) 603; *Howell* v. *Smith, Adm.,* 123 Wis. 510, 3 A. & E. Ann. Cas. 773; *Russell* v. *Place,* 24 L. Ed. (U. S.) 214; *Troxell* v. *Rail-*

road, 57 L. Ed. 586; 1 Freeman on Judgments, page
259; Washington Packet Co. v. Sickles, 16 L. Ed. 650;
Snow v. Alley, 156 Mass. 193; Matter of Van Norman,
41 Minn. 494; McNutt v. Hilkins, 80 Hun, Supreme Court
Reports (N. Y.) 235; Rankin v. Tygard, 119 C. C. A. 591;
Wells v. Western Union, 123 N. W. 371; Clark v. Heath,
101 Me. 530; Lenox v. Savings Bank, 131 Ia. 79; Assher
v. Peg, 123 N. W. 739; Stone v. Snell, 125 N. W. 1108;
McFadden v. Thorp Elevator Co., 118 N. W. 242; Babcock Cornish Co. v. Urquhart, 101 Pac. 713, 53 Wash.
168; Astin v. Railroad Co., 128 N. W. 265; Holbrook v.
Quinlan & Co., 80 Atl. 339; De Rosia v. Furlong, 83 Atl.
271; Kelsey v. Agricultural Ins. Co., 79 Atl. 539; Brown
v. Fletcher, 105 C. C. A. 425; Mintz v. Jacobs, 163 Mich.
280; Corbett v. Railroad, 219 Mass. 351; Brodke v. Lesser, 157 S. W. 457; Gould v. Blodgett, 61 N. H. 115;
Union Central Insurance Co. v. Drake, 131 C. C. A. 88;
Spurr v. Homt Insurance Co., 40 Minn. 424; McCall v.
Jones, 72 Ala. 371; Northern Insurance Co. v. Grand
View Building Association, 51 L. Ed. (U. S.) 109.

In conclusion on this point we desire to cite the case of
Harrill v. Davis, 94 C. C. A. 47, wherein Judge SANBORN
said: "The fatuous choice of a fancied remedy and the
futile pursuit of it till the court adjudges it never had any
existence, is no defense to an action to enforce an actual
remedy inconsistent with that first invoked."

Argued orally by J. M. Stevens and H. P. Dart, for
appellant, and J. H. Mize, for appellee.

SYKES, P. J., delivered the opinion of the court.

The appellee, Gulf Transportation Company, a corporation, as complainant in the chancery court, seeks in its
bill a recovery against the appellant (Firemen's Fund
Insurance Company) of thirty thousand dollars damages
for the failure of appellant company to properly repair
the barge Bert.

The bill alleges that the barge Bert, the property of appellee, was engaged in the oil-carrying business in the Gulf of Mexico; that it was insured in the appellant insurance company in the sum of thirty-five thousand dollars; that the barge was structurally sound and seaworthy at the time of the issuance of the insurance policy, and was in such condition when it sustained damages in a storm at sea, which injuries consisted of its being hogged, waterlogged, and strained in the storm, and while in this condition it was towed into Galveston, Tex., and turned over to the appellant insurance company under the terms and conditions of the insurance policy; that the appellant insurance company took charge of the barge through its agent, examined it, and repaired it at a cost of over twenty thousand dollars; that under the law and general custom of business these bills for repairs were paid by the appellee company, when approved and O. K.'d by the agent of the appellant company; that after these repairs were made by the insurance company, it (the insurance company) through its agent issued a certificate of seaworthiness to the complainant, whereupon complainant, relying upon this representation of seaworthiness of the defendant, insurance company, leased the barge to a company engaged in the oil-carrying business; that the barge the next day after being loaded with oil, in the Houston Ship Channel, in smooth and placid waters, stranded and practically went to pieces; that the cause of this injury to the barge was the failure of the appellant, insurance company, to properly and adequately repair the barge at Galveston; that when the insurance company took charge of the barge at Galveston to repair it, it became its duty to put the barge in seaworthy condition and make proper repairs; that the repairs made were inadequate, did not put the barge in seaworthy condition, and were the proximate cause of her injury in the Houston Ship Channel, which injury amounted to practically a total loss; that before the injury sustained in the storm the vessel was sound and seaworthy; that complainant relied on the

representations of the defendant insurance company that the repairs made on the barge put her in a seaworthy condition. After these repairs were made the insurance policy was reinstated on the barge by the appellant company.

After a demurrer had been overruled to the bill the appellant answered generally denying the allegations of the bill and setting up certain alleged defenses contained in the insurance policy. It denied that it repaired the vessel through its agent, but alleged that the repairs were agreed upon by its agent and the agent of the appellee, and were made by the appellee, and that it is not responsible for any insufficiency in these repairs. It denied that the barge was ever sound and seaworthy, but alleged that it was structurally weak and not fitted for the oil-carrying business. The answer refers to and specifically sets up a previous lawsuit between these two parties about the same subject-matter and alleges that all issues involved in this case were litigated therein, and that the previous cause is *res adjudicata* of the issues here involved.

The cause was heard before the chancellor on pleadings and proof, and a decree was rendered in favor of the appellee Gulf Transportation Company, for the amount sued for, from which decree this appeal is here prosecuted.

The opinion of the court in the previous suit between these parties will be found in 121 Miss. 655, 83 So. 730, 9 A. L. R. 1307. For a complete understanding of all of the facts relating to these two suits, it will be necessary to read this former opinion of the court.

The two principal questions raised in this appeal are, first, whether or not the insurance company through its agent agreed to properly repair the barge Bert and put it in a seaworthy condition instead of making the indemnity under its insurance policy.

Subsidiary questions arising under this are, first, whether the barge was structurally sound and seaworthy

before it was injured in the Galveston storm, and, second, if it was, and the insurance company repaired the barge, did these repairs place the barge in as good condition as she was before the storm.

The second principal question involved is whether, by virtue of the former suit, instituted by appellee (complainant), and reported in 121 Miss., *supra,* appellee is precluded from maintaining this suit. The subsidiary questions involved here are: (a) Is that litigation *res adjudicata* of this? (b) By prosecuting that suit did complainant make an election of remedies? (c) Did it thereby split a cause of action? and (d) Is it thereby estopped from maintaining this suit?

Upon the first question, the testimony of Mr. Fant, the owner of the Gulf Transportation Company, is to the effect that Mr. Anderson, a ship surveyor was the agent of the insurance company; that Anderson had the barge put in the dry docks for repairs, drew the plans and specifications therefor, and represented that these repairs would make the barge again seaworthy and place it in as good condition as it was before the Galveston storm; that he relied upon these representations of Anderson as the agent of the insurance company, signed the contract for the making of the repairs with the contractor, and paid the bills therefor after they were O.K.,'d by Anderson. The testimony also shows that Anderson made reports of the progress of the work and kept the insurance company fully advised as to what was being done. Fant testified that the reason he signed the contract for the making of the repairs with the contractor was because it was the custom for the owner of the vessel to do so, and he was told by Anderson that this was proper; that in all of the transactions with Anderson he and Anderson both recognized that these repairs were being made by the insurance company in place of paying the indemnity in accordance with the policy; that Anderson assured him during the progress of the work that the repairs would make the barge seaworthy; and that after

their completion he assured him that the barge was sea-worthy, and issued a certificate to that effect.

The record shows that the repairs were properly made according to the specifications of Anderson.

Anderson's own testimony showed that he was em-ployed by the insurance company as their representative in the matter. He testified, however, that he did not un-dertake the making of these repairs as the agent of the insurance company, but recommended that they be made to Fant, and that they were in point of fact made by Fant and not by the insurance company.

From Fant's testimony we think the chancellor had the right to decide this question of fact in favor of the ap-pellee, namely, that the insurance company made the re-pairs on the barge. The barge had been injured in a storm, which under the policy is a peril of the sea. Be-cause of this injury the insurance company became lia-ble under this policy. Instead, however, of making this indemnity, under this testimony, it agreed with Fant, in lieu thereof, to repair the vessel. Both parties agreed that the insurance company make these repairs. Com-plete indemnity is the contract of insurance, and, when an insurance company attempts to make repairs instead of paying for the damage, it thereby becomes its duty to place the vessel in as good condition as it was before the storm. *N. W. Transportation Co.* v. *Continental Ins. Co.* (C. C.), 24 Fed. 171. In that case it is said:

"Having taken possession of her under an obligation to indemnify the owner for the entire loss occasioned by the voluntary stranding, we think the company must be con-clusively presumed to have acted with the intention of doing their whole duty in that regard, and that they can-not discharge themselves of any portion of their obliga-tion."

Again in the same opinion it is said:

"The whole law upon the subject may be summed up as follows: When an insured vessel is stranded and aban-doned there are three courses open to the underwriters:

They may accept the abandonment and pay for a total loss; they may allow the vessel to lie on the beach, and insist that there was no right to abandon; or they may elect to raise and repair her (if bound to repair), and if they can do this for less than half her valuation, they may return her to the owners and thus avoid paying for a total loss; but in so doing they must act promptly, that the owners may be repossessed of their property without unnecessary delay."

Again in the same opinion it is stated that:

"Having once made their election to raise the vessel, we do not understand that they are at liberty to stop short of full performance, or to tender her back to the owners without complete indemnity for the loss."

To the same effect is Joyce on Insurance, vol. 5, section 3049, p. 5257, wherein the rule is thus stated:

"The object of insurance being indemnity, the assurers, who have taken possession for the purpose of repair, must tender the vessel back in such condition as to indemnify assured."

See *Ins. Co.* v. *Cotton Oil Co.*, 108 Miss. 589, 67 So. 58; *Hume* v. *Frenz*, 150 Fed. 502, 80 C. C. A. 320; *Morrell* v. *Ins. Co.*, 33 N. Y. 429, 88 Am. Dec. 396.

There was a conflict in the testimony about whether or not the repairs made on the barge were sufficient to place her in as good condition as she was before the storm. The testimony of the appellee was to the effect that prior to the storm she was structurally sound and seaworthy, and the record shows that she made several voyages with cargoes of oil before sustaining the injuries in the storm.

On the other hand, there was testimony for the appellant that the barge was structurally weak, and, to quote the language of one of the witnesses for appellant, "a mistake from the beginning." It is sufficient to say that the chancellor was authorized to settle this conflict of fact in favor of the appellee.

From these views it follows that we think the chancellor was authorized in finding that the appellant, insurance company, failed in the duty it owed appellee to

properly repair the barge, and is consequently liable in this case, unless complainant is precluded by virtue of the prosecution of the former suit.

This brings us down to a consideration of that question. In the first suit, reported in 121 Miss., *supra,* the Gulf Transportation Company sought recovery: First, for the return of its *pro rata* share under the insurance policy of the amount paid out for it for repairs on the barge, on the theory that the repairs were adequate and sufficient. Second, it asked to recover upon the reinstated insurance policy for the damage to the barge in the second disaster, on the theory, first, that the repairs at Galveston were made under the supervision of the agent of the insurance company and his issuing a certificate of seaworthiness, and that therefore the insurance company was estopped from contending that the barge was not seaworthy at the time of the second disaster; and, second, that the second disaster was a peril of the sea covered by the terms of the policy. In that litigation there was a recovery by the Gulf Transportation Company for its *pro rata* share of the repairs on the vessel. But a recovery was denied it on account of the second disaster. The court there held that the second disaster was not a peril of the sea and was not covered by the terms of the policy, and that the insurance company was not estopped because of its supervision in making the repairs and issuing the certificate of seaworthiness from claiming that the second disaster was not a peril of the sea and therefore not covered by the policy.

In that case the Gulf Transportation Company was attempting to recover for the second disaster under the reinstated policy of insurance. It claimed that the vessel was properly repaired, was seaworthy, and the disaster was a peril of the sea as contemplated by the policy, or that, so far as the insurance company was concerned, it was estopped from claiming that the vessel was not seaworthy and was not injured by a peril of the sea. In that

case the transportation company assumed that the repairs were sufficient and adequate.

In this case the transportation company (appellee) assumes a contrary or antagonistic position to that assumed in the first suit, namely, in this suit, that the repairs made by the insurance company were insufficient, and that the vessel as a matter of fact was not seaworthy at the time of the second disaster.

The question adjudicated in the first litigation, was that the vessel was not injured because of a peril of the sea, and consequently the insurance company was not liable on the reinstated policy. The present suit is not a suit based directly on either the original or reinstated policy of insurance, but is a suit based upon the contract to properly repair the vessel after the first disaster.

In the first suit the Gulf Transportation Company neither alleged nor attempted to prove a breach of the contract to repair, but assumed that the repairs were adequate. In fact its entire theory was that the repairs were adequate, and that the vessel was seaworthy and injured in the second disaster because of a peril of the sea.

In the case of *Hardy* v. *O'Pry,* 102 Miss. 197, 59 So. 73, the rule is thus stated:

"The usual test for determining whether the cause of action in the two suits is the same is to ascertain whether the evidence necessary to maintain the one would authorize a recovery in the other. If not, the prior judgment is not a bar to the second."

And in the case of *Insurance Co.* v. *Tate Mercantile Co.,* 117 Miss. 769, 78 So. 711, it is said: "The first action must be competent to dispose of the case on its merits." But, in addition thereto it must be shown that "such disposition has been made."

In the case of *Phelps* v. *Commodore* (Miss.), 1 So. 833, relating to the equity rule, the court said:

"The rule seems to be well settled in equity, and has been repeatedly announced by this court, that a complain-

ant who seeks relief upon one ground cannot, upon failing to establish that ground, be relieved upon independent or inconsistent facts established by the evidence, but not relied on in the pleadings."

The case of *Norton* v. *Huxley,* 13 Gray (Mass.) 285, is instructive. It is there stated:

"The principle is well settled, that a judgment in a former suit between the same parties is a bar to a subsequent action only when the point or question in issue is the same in both. The judgment is conclusive in relation to all matters in the suit which were put in issue; but has no effect upon questions not involved in it, and which were not then open to inquiry, or the subjects of litigation (citing a number of cases). . . . Governed by this principle, it is very plain, upon a comparison of the allegations and cause of action set forth in the former suit, the record of which the defendant produced and offered to give in evidence, with the allegations and cause of action set forth in this, that the points or questions in issue are not the same in the two suits, and consequently that the judgment in the former constitutes no bar to the maintenance of the present action. It is true that both originated in the same series of transactions, and in the conversations and communications which took place between the parties concerning them. But the result of the former suit shows that the plaintiff there wholly mistook the effect of what was said by the defendant, and so failed to establish the claim which he then attempted to enforce. That was an action of contract, in which a promise and a breach of the promise were averred. This is an action of tort in which the plaintiff alleges that he sustained damage by the willfully fraudulent representations of the defendant. Proof which would fully support the one would have no tendency to maintain the other; for the reason, that the questions involved in the respective issues were essentially unlike."

From these authorities we conclude that the first suit is not *res adjudicata* of the questions here involved.

The second question then is whether or not there was an election of remedies by the transportation company in the prosecution of the first suit. This is not a case of an election of remedies, but is simply a case where the transportation company in the first case made a mistake as to its remedy. It mistakenly thought it had a remedy upon the reinstated policy for the loss of its vessel in the second disaster. The court, however, decided that it did not. The recovery in that case of the sixteen thousand dollars was a separate matter, and was simply the *pro rata* that the insurance company was required to refund the transportation company for paying the bills, really of the insurance company.

It is only where one has two or more remedies for a cause of action, upon either of which he may recover, that the pursuing of one of these constitutes an election. This rule is well stated in the following authorities, namely:

"When plaintiff sued a city on an express contract for lighting and was defeated, such suit did not constitute an election of remedies precluding the plaintiff from thereafter maintaining a suit on *quantum meruit* for the reasonable value of the service rendered; such remedies not being inconsistent."

In this case plaintiff, having brought suit on an express contract for lighting, on the ground that the contract had not been substantially performed, wherein he lost, he then brought a suit in *quantum meruit* for what he had done, and the court held that the judgment rendered in the suit on express contract was not *res adjudicata* against the suit on *quantum meruit*.

"The fact that a party through mistake attempts to exercise a right to which he is not entitled, or has made choice of a supposed remedy that never existed, and pursued it until the court adjudged that it never existed, should not and does not preclude him from afterwards pursuing a remedy for relief, to which in law and good

conscience he is entitled." *Gas Co.* v. *Hutchinson,* 160 Fed. 41, 90 C. C. A. 547, 19 L. R. A. (N. S.) 219.

"But the fact that a party wrongfully supposed that he has two such rights, and attempts to choose the one to which he is not entitled, is not enough to prevent his exercising the other, if he is entitled to that. There would be no sense or principle in such a rule." *Snow* v. *Alley,* 156 Mass. 193, 30 N. E. 691.

"Election is simply what its name imports; a choice, shown by an overt act, between two inconsistent rights, either of which may be asserted at the will of the chooser alone. Thus, 'if a man maketh a lease, rendering a rent or a robe, the lessee shall have the election.' Co. Litt. 145a." *Bierce* v. *Hutchins,* 205 U. S. 340, 27 Sup. Ct. 524, 51 L. Ed. 828.

"Where a wrong has been perpetrated and the victim is doubtful which of two inconsistent remedies is the right one, he may pursue both until he recovers through one, and, in the absence of facts creating an equitable estoppel, his prosecution of the wrong remedy to a judgment of defeat will not estop him from subsequently pursuing the right one to victory." *Rankin* v. *Tygard,* 198 Fed. 795, 119 C. C. A. 591.

"The fatuous choice of a fancied remedy and the futile pursuit of it until the court adjudges it never had any existence, is no defense to an action to enforce an actual remedy inconsistent with that first invoked." *Harrill* v. *Davis,* 168 Fed. 187, 94 C. C. A. 47, 22 L. R. A. (N. S.) 1153.

In *Tate Mercantile Co., supra,* this court said:

"One having a cause of action for damages arising from a breach of a contract, and which cause of action at the same time constitutes a wrong for which the plaintiff may waive the contract and sue in tort, the plaintiff then has two courses, either of which he may pursue. He may sue in contract for the damages arising from the breach, or he may waive the contract and sue in tort. He must, however, elect upon which theory he will proceed, and

135 Miss.—36.

his declaration, or the counts contained in the same must be either all in contract or all in tort.''

Neither was there a splitting of the cause of action. The cause of action here sued on is entirely different from the one in the first case. The suit there was, first, for the amount expended for proper repairs on account of the insurance company, and, second, for recovery on the re-instated insurance policy. The suit here is for damages for improper and inadequate repairs, which caused practically the loss of the barge. It is contended by the appellant that at the time of the institution of the first suit the appellee here was in possession of all of the facts relating to the two disasters, and is therefore estopped to recover because of the alleged inconsistent position taken by it in the former suit.

There can be no estoppel where a party has a good cause of action but attempts to pursue the wrong remedy therefor. This is what happened in the former suit

The decree of the lower court is affirmed.

*Affirmed.*